**Fair v. State Farm Mutual Automobile Insurance Co.**

*Guy H. Brooks,* for plaintiff.
*Stephen L. Banko Jr.,* for defendants.

ALLISON, *J.,* October 22, 1992—This case is before us to dispose of preliminary objections of defendant, State Farm Mutual Automobile Insurance Co. and Julie Dickson, trading and doing business as Julie Dickson Insurance to a complaint filed by Ross G. Fair, individually and as administrator of the estate of his wife, Susanne M. Fair.

In January of 1991, the plaintiffs visited the office of State Farm agent Julie Dickson, to apply for a health insurance policy. At this time, however, agent Dickson was not available and the Fairs' application was filled out by an office person, Peggy L. Enck. Once the application was filled out the Fairs signed a "conditional receipt" and paid State Farm a check for $323.12. The check covered the membership fees and the initial premium for both Ross and Susanne Fair for two months. State Farm cashed this check on January 24, 1991.

On January 31, 1991, Susanne Fair was diagnosed as having acute leukemia. On or about February 22, 1991, State Farm received from the Fairs an additional premium check in the amount of $123.06. State Farm cashed this check on February 25, 1991. On March 13, 1991, an

underwriting supervisor for State Farm notified agent Dickson that Susanne Fair would be denied medical coverage due to her medical history of "headaches, back and neck disorder, knee disorder, sore throat, fever and myalgia."[1] The Fairs were subsequently notified that they were denied coverage on March 15, 1991. On August 2, 1991, Susanne Fair died of acute lymphocytic leukemia.

Plaintiff filed a complaint on December 5, 1991, containing the following counts: Count 1—Breach of Contract; Count II—Violation of the Unfair Trade Practices Act and the Consumer Protection Law; Count III—Negligent and/or Intentional Misrepresentation; Count IV—Bad Faith; Count V—Intentional Infliction of Emotional Distress; and Count VI—Negligence. Defendant timely filed preliminary objections requesting the court to dismiss plaintiff's claims arising out of State Farm's alleged violation of the Unfair Insurance Practices Act, dismiss plaintiff's claim for intentional infliction of emotional distress, dismiss plaintiff's claim for punitive damages generally and under 42 Pa.C.S. §8371, strike plaintiff's claim for an amount in excess of $100,000 and order plaintiff to file an amended complaint pleading special damages specifically.

We first address defendant's claim that plaintiff may not base a claim for "bad faith" or punitive damages against an insurance company upon an alleged violation of the Unfair Insurance Practices Act.[2]

The Unfair Insurance Practices Act was intended by our state legislatures to serve the public and handle complaints from insureds as to unfair and deceptive insurance practices conducted on a regular basis. The statutory prohibitions within the Act are enforced by the Insurance

---

1. Plaintiff's complaint, paragraph 14.
2. 40 P.S. §1171.1. *et seq.*

Commissioner of Pennsylvania, who is empowered to examine and investigate the affairs of every person engaged in the business of insurance in this state to determine whether the Act has been violated. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981), 40 P.S. §1171.7. In essence, the intent of our state Legislature in passing the Act was to regulate and enforce provisions of the Act with the insurance departments of Pennsylvania and not through a court of law. Our appellate courts have acknowledged as such in recent decisions. See *Gordon v. Pennsylvania Blue Shield,* 378 Pa. Super. 256, 548 A.2d 600 (1988), and *Moy v. Schreiber Deed Security Co.,* 392 Pa. Super. 195, 572 A.2d 758 (1990), (specifically acknowledging that a cause of action under the Unfair Insurance Practices Act was not an action within the court's jurisdiction). After reading plaintiff's complaint we conclude that he is asserting specific claims based on the violation of the Unfair Insurance Practices Act (UIPA) and therefore we grant defendants' request to strike from the complaint any allegations of bad faith based upon the UIPA.

We also reject plaintiff's argument that his references to a violation of the UIPA were only put forth to establish a cause of action under the Consumer Protection Law. The law is quite clear that whether the alleged violations of the UIPA are raised as a primary claim or a secondary claim it will not be entertained by the court. In this case, in order to determine whether defendants violated the CPL it must first be determined whether they violated the Unfair Insurance Practices Act. Since that initial determination is not within the authority of the court to decide, it is also not within the authority of the court to entertain the primary claim under the CPL. See *Moy v. Schreiber Deed Security Co., supra,* at 200, 572 A.2d at 760-761.

Next this court considers defendant's request for a demurrer to Count V of the complaint which is the allegation of intentional infliction of emotional distress. When confronted with preliminary objections in the nature of a demurrer the court will accept as true all properly pleaded allegations and material facts in the pleadings which give rise to the objections. *Pennsylvania Medical Providers Assn. v. Foster,* 136 Pa. Commw. 232, 582 A.2d 888 (1990). The court will also accept as true every inference deducible from those facts as well as facts from which the court can take judicial notice. *Babjack v. Mt. Lebanon Parking Authority,* 102 Pa. Commw. 499, 518 A.2d 1311 (1986). The question presented by demurrer is whether on the facts averred the law says with certainty that no recovery is possible. A demurrer cannot be sustained if there is any doubt as to whether the complaint adequately states a claim for relief under any theory of law. *Snyder v. City of Philadelphia,* 129 Pa. Commw. 89, 564 A.2d 1036 (1989).

Plaintiff alleges that this claim is an independent cause of action and should not be considered as a damage element to plaintiff's claim for breach of contract contained in Count I of the complaint. However, after reviewing the complaint ourselves we find that the claim for intentional infliction of emotional distress arises directly from the alleged breach of the health contract. In other words, if not for the alleged breach there would not be an intentional infliction of emotional distress count. Therefore we are treating Count V as a damage element to the breach of contract action.

Ordinarily, emotional distress damages are not recoverable under a breach of contract action but there are two exceptions. The first is when the emotional distress is accompanied by bodily harm. The second is when the contract or the breach is of such a kind that serious

emotional disturbance was a particularly likely result. *Rodgers v. Nationwide Mutual Insurance Co.* 344 Pa. Super. 311, 496 A.2d 811 (1985). Restatement (Second) of Contract §353. We note that this restatement section has not been adopted in Pennsylvania. *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982). Furthermore, the perpetrator of this tort must display extreme and outrageous conduct. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Rittenhouse Regency Affiliates v. Passen,* 333 Pa. Super. 613, 482 A.2d 1042 (1984). We find the conduct alleged by the plaintiff in this case not to meet this high standard. We therefore grant the defendant's demurrer to the count of intentional infliction of emotional distress.

We next consider defendant's demurrer to plaintiff's punitive damages claim. In Count IV of the complaint, plaintiff states a claim for punitive damages under 42 Pa.C.S. §8371 which in pertinent part reads as follows:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(2) Award punitive damages against the insurer."

Defendant argues that plaintiff should not be able to pursue this claim because technically there was never any formal policy issued to the Fairs. Plaintiff counterargues by stating that the policy was in fact issued but that no copy of the policy was ever provided to the Fairs. After reviewing the complaint and attached exhibits it appears that a contract may have been formed between the two parties for the coverage of health insurance. The Fairs verbally conveyed demographic and medical information to a State Farm representative and they also

gave State Farm two premium checks over a period of 30 days which were sufficient to pay for a three month coverage for both Ross G. Fair and Susanne M. Fair with such checks being cashed by State Farm. Given the foregoing a jury could find that a policy was in effect and we will not bar plaintiff's claim for statutory punitive damages pursuant to 42 Pa.C.S. §8371

We will, however, grant defendant's demurrer to plaintiff's general claims for punitive damages contained in Counts II, V and VI. Punitive damages may be given when the act is done with reckless indifference as well as bad motive. *Delahanty v. First Pennsylvania Bank N.A.*, 318 Pa. Super. 90, 464 A.2d 1243 (1983). Punitive damages must be based on conduct which is malicious, wanton and reckless, willful or oppressive conduct. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). Furthermore, the state of the mind of the actor is vital. The act or the failure to act must be intentional, reckless or malicious. *Rizzo v. Haines*, 521 Pa. 484, 555 A.2d 58 (1989).

Instantly, plaintiff asks us to sustain his punitive damages based upon such allegations as "the agent intentionally authorizing an individual to explain the terms and conditions of the insurance policy in direct contradiction to State Farm's own policy of insurance"[3] and that defendants "intentionally misrepresented the nature, extent, terms and conditions and duration of the coverage which plaintiff was paying premiums."[4] We find these allegations insufficient to support the claims for punitive damages. Most notably it fails to show the state of mind of the defendants. In plaintiff's complaint there are no allegations of malice, vindictiveness or wantonness. We

---

3. Plaintiff's brief at p. 14.
4. *Id.*

find the evidence presented as insufficient to support a finding that the defendants acted with a state of mind necessary to impose punitive damages.

With regard to defendants' other preliminary objections we rule that plaintiff does not have to file a more specific pleading for unpaid medical bills, as this information is a matter for discovery and we also will not strike the plaintiff's claim for damages in excess of $100,000. If need be, plaintiff can replead the complaint so the amount of damages requested is in compliance with Pa.R.C.P. 1021(b).[5]

Pursuant to the foregoing, we enter the following

## ORDER

And now, October 22, 1992, the court hereby sustains defendants' preliminary objections to Count II, (claim for damages arising out of defendants' alleged violation of the Unfair Trade Practices Act), Count V (intentional infliction of emotional distress) and to plaintiff's general claims for punitive damages contained in Counts II, V and VI.

Court denies defendants' preliminary objection to statutory punitive damages contained in Count IV and also to defendants' request for a more specific pleading for unpaid medical bills and to strike plaintiff's claim for damages in excess of $100,000.

---

5. Pa.R.C.P. 1021(b) states in relevant part:

"(b) Any pleading demanding relief for unliquidated damages shall without claiming any specific sum set forth only whether the amount is or is not in excess of $10,000."