618 A.2d 1056

MAGAZINE PUBLISHERS OF AMERICA and Rodale Press, Inc. and Cowles Magazines and A.K.A. Productions and Commonwealth Communications Services, Inc. and Farm Journal, Inc. and Metro Corp. and News America Publications, Inc. and Northwoods Magazine Company and Press–Enterprise, Inc. and QED Communications, Inc. and Springhouse Corporation and Wentworth Publishers Co., Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE c/o Eileen H. McNulty, Secretary and Eileen H. McNulty, in her capacity as Secretary of the Department of Revenue, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1992.

Decided Nov. 25, 1992.

Reargument Denied Dec. 18, 1992.

594

David H. Marion and Howard J. Bashman, for petitioners.

Matthew W. Tomalis, Deputy Atty. Gen., for respondent.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Before this Court in our original jurisdiction is an application for summary relief filed by the Magazine Publishers of America, a national trade association whose members publish magazines purchased in Pennsylvania, as well as several indi-

vidual publishing companies whose magazines are purchased in Pennsylvania (collectively, Petitioners), seeking an order declaring this state's general sales and use tax to be unconstitutional as applied to magazines and enjoining the Department of Revenue (Department) from collecting the tax.

The Act of December 13, 1991, P.L. 373 (Act 40) amended Section 7204 of the Tax Reform Code of 1971 (Tax Code) [1] by deleting the magazine exclusion from the sales tax. Prior to the enactment of Act 40, both newspapers and magazines had been excluded from the sales tax. Act 40 amended Section 7204 by specifically deleting magazines from the newspaper exemption set forth in Section 7204(30), 72 P.S. § 7204(30). [2]

On March 4, 1992, Petitioners filed a petition for review in this Court in the nature of a complaint for declaratory and injunctive relief, alleging that the December 13, 1991, amendment to the Tax Code which deleted the sales tax exclusion for magazines violates Petitioners' state and federal constitutional rights to freedom of speech, freedom of the press, equal protection of the laws and uniformity of taxation. On April 15, 1992, the Department filed an answer and new matter. On May 15, 1992, Petitioners filed a reply to the Department's new matter. On June 10, 1992, Petitioners filed the application for summary relief that is now before us for disposition. [3]

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7204.

2. Section 7204(30) of the Tax Code provides:
    (30) The sale at retail or use of newspapers. For purposes of this section, the term "newspaper" shall mean a "legal newspaper" or a publication containing matters of general interest and reports of current events which qualifies as a "newspaper of general circulation" qualified to carry a "legal advertisement" as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions), not including magazines. This exclusion shall also include any printed advertising materials circulated with such newspaper regardless of where or by whom such printed advertising material was produced.

3. Summary relief is proper where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the movant is entitled to relief as a matter of law. *Pennsylvania Independent Petroleum Producers v. Department of Environmental Resources,* 106 Pa.Commonwealth Ct. 72, 75, 525 A.2d 829, 832 (1987).. Petitioners' complaint consists of a *prima*

■ Petitioners contend that the sales and use tax violates the rights to free speech and freedom of the press under the First Amendment to the Constitution of the United States[4] because it discriminates on the basis of content, singles out magazines for special treatment and impedes the free flow of ideas. Petitioners argue that because the sales tax imposes a special burden on their First Amendment rights, the Department must show that the tax advances a compelling state interest using the least restrictive means available.

■ In *Leathers v. Medlock*, —— U.S. ——, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991), the United States Supreme Court recently considered the constitutionality of an Arkansas sales tax scheme that imposed a tax on cable television while exempting the print media. The Supreme Court noted that differential taxation of the media does not by itself raise First Amendment concerns. —— U.S. at ——, 111 S.Ct. at 1442. Instead, differential taxation of First Amendment speakers only triggers heightened scrutiny under the First Amendment if the tax: (1) singles out the press; (2) targets a small group of speakers; or (3) discriminates on the basis of the content of the speech. 111 S.Ct. at 1443–44.

In the present case, a newspaper is defined in 45 Pa.C.S. § 101(a), as:

(1) A printed paper or publication, bearing a title or name, and conveying reading or pictorial intelligence of passing events, local or general happenings, printing regularly or irregularly editorial comment, announcements, miscellaneous reading matter, commercial advertising, classified advertising, legal advertising, and other notices, and which has been issued in numbers of four or more pages at short intervals, either daily, twice or oftener each week, or weekly, continuously during a period of at least six months, or as

*facie* challenge to the constitutionality of the sales and use tax and thus does not involve any factual determinations. Accordingly, consideration of the application for summary relief is appropriate.

**4.** The First Amendment provides, "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I. This amendment is made applicable to the states through the Fourteenth Amendment.

the successor of such a printed paper or publication issued during an immediate prior period of at least six months, and which has been circulated and distributed from an established place of business to subscribers or readers without regard to number, for a definite price or consideration, either entered or entitled to be entered under the Postal Rules and Regulations as second class matter in the United States mails, and subscribed for by readers at a fixed price for each copy, or at a price fixed per annum. A newspaper may be either a daily newspaper, weekly newspaper, newspaper of general circulation, official newspaper, or a legal newspaper, as defined in this section. Continuous publication within the meaning of this section shall not be deemed interrupted by any involuntary suspension of publication resulting from loss, destruction, failure or unavailability of operating facilities, equipment or personnel from whatever cause, and any newspaper so affected shall not be disqualified to publish official and legal advertising in the event that publication is resumed within one week after it again becomes possible.

(2) A printed paper or publication, regardless of size, contents, or time of issue, or number of copies issued, distributed and circulated gratuitously, is not a newspaper.

(3) A printed paper or publication, not entitled to be entered, or which has been denied entry, as second class matter in the United States mails under the Postal Rules and Regulations of the United States is not a newspaper.

Also, under 45 Pa.C.S. § 101 a magazine is defined as, "Partakes of the nature of a periodical." A periodical is defined under this section as:

A printed paper or publication, issued in pamphlet or book form, regardless of page size or number of pages, at stated intervals of more than one day between each issue, containing either general, class, trade, technical, scientific, serial articles, or other reading matter, advertising, et cetera, and entitled to be entered as second class matter in the United States mails under the Postal Rules and Regulations of the United States.

■ Initially, we must examine Petitioners' contention that the sales tax discriminates against free speech on the basis of content. In *Leathers* the Supreme Court noted that there was nothing in the language of the Arkansas gross receipts tax statute that referred to the content of mass media communications and that the sales tax was not content based. —— U.S. at ——, 111 S.Ct. at 1445.

Similarly, in the present case, nothing in the language of the newspaper exemption in Section 7204(30) of the Tax Code distinguishes newspapers from magazines on the basis of content.[5] Under Section 7204(30) *all* magazines are subject to the sales and use tax regardless of their content. As reflected by the statutory definitions of newspapers and magazines set forth in 45 Pa.C.S. § 101, no distinctions are made based upon the contents of newspapers and magazines. Instead, the distinctions between newspapers and magazines are based on the format and the frequency of publication. A magazine or periodical is a publication issued in pamphlet or book form at regular intervals of more than one day between each issue. A newspaper is a publication issued at short intervals either daily, twice or oftener each week, or weekly. Based on these distinctions and given the fact that the terms "newspaper" and "magazine" are words of common usage which must be given their ordinary meanings, we may easily identify a publication as either a newspaper or magazine without any reference to its content.[6] Accordingly, we conclude that the sales tax at issue does not discriminate between newspapers and magazines on the basis of content.

■ Next, we examine Petitioners' contention that the sales tax singles out magazines for special treatment. In *Leathers* the Supreme Court noted that the Arkansas sales tax is a tax of general applicability, which applies to the sale of all tangible personal property and a broad range of services, unless the

5. Section 7204(30) does provide that in order to qualify for the newspaper exemption, a newspaper must be a "legal newspaper" eligible to carry legal advertising. This is a noncontent-based attribute a newspaper, but not a magazine, usually possesses.

6. Petitioners do not contend that their publications should be classified as newspapers rather than magazines under 45 Pa.C.S. § 101.

property falls within a group of special exemptions. The Supreme Court noted, "The tax does not single out the press and does not therefore threaten to hinder the press as a watchdog of government activity.... We have stated repeatedly that a state may impose on the press a generally applicable tax." 111 S.Ct. at 1444. In the present case, the six percent sales tax in Section 7202 of the Tax Code is also clearly a tax of general applicability on the sale of all tangible personal property and a broad range of services, subject to specific exemptions. As a result, we must conclude that the sales tax does not single out magazines for special treatment.

■ Next, we examine Petitioners' contention that the sales tax impedes the free flow of ideas. Again, we find *Leathers* to be controlling; in fact the *Leathers* rationale does not allow adoption or approval of Petitioner's position regardless of the appeal of its reasonableness and simplicity. In *Leathers*, the Supreme Court noted that differential taxation of speakers, even members of the press, does not implicate the First Amendment unless the tax is directed at, or presents a danger of suppressing, particular ideas. —— U.S. at ——, 111 S.Ct. at 1447.

In *Arkansas Writers' Project v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the Supreme Court held that a sales tax on magazines that exempted religious, professional, trade and sports magazines based entirely on their content, discriminated against a narrow group of magazines and constituted selective taxation "particularly repugnant to the First Amendment." 481 U.S. at 229, 107 S.Ct. at 1728. In the present case, we must conclude that this state's generally applicable sales tax does not reflect any interest by the General Assembly in censoring Petitioners' activities or stifling the free exchange of ideas, and there is no allegation that the Legislature selected and burdened a narrow group with the tax. Section 7204(30) provides that *all* magazines are subject to the sales tax. Accordingly, we conclude that the applicability of the sales tax on magazines does not burden Petitioners to the extent that it violates any of their First Amendment rights.

■ Petitioners next contend that the sales tax violates their rights under Article 1, Section 7, of the Pennsylvania Constitution, which provides in pertinent part:

**Freedom of press and speech; libels.**

The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Petitioners contend that their rights to free speech and freedom of the press under Pa.Const. Art 1, § 7, are broader than their rights under the First Amendment. However, as previously determined in our analysis of Petitioners' First Amendment claim, the sales tax is not an attempt to discriminate on the basis of the content of the taxpayer's speech, single out magazines for special treatment, or impede the free flow of ideas. Instead, the sales tax focuses on the format and frequency of the publication without regard to content. As such, this noncontent-based sales tax is not such a restraint on Petitioners' right to freely communicate their thoughts and opinions that it is in violation of Pa.Const. Art. 1, § 7.

■ Petitioners also contend that the sales tax violates their federal and state constitutional rights to equal protection of the laws.[7] Allegations of violations of the equal protection clause and of the uniformity clause, are to be analyzed in the same manner. *Leonard v. Thornburgh,* 507 Pa. 317, 320, 489 A.2d 1349, 1351 (1985). The legislature possesses wide discretion in matters of taxation. *Id.* The burden is upon the taxpayer to demonstrate that a classification made for purposes of taxation is unreasonable. *Id.* at 320–21, 489 A.2d at 1351. Tax legislation will not be declared unconstitutional

---

**7.** The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Pa. Const. Art. 1, § 26 provides, "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

unless it clearly, palpably and plainly violates constitutional rights. *Id.*

Under the equal protection clause, and under the uniformity clause, absolute equality and perfect uniformity in taxation are not required. *Leonard,* 507 Pa. at 321, 489 A.2d at 1352. In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary, reasonable and just basis for the difference in treatment. *Id.* The focus of judicial review is whether there can be discerned some concrete justification for treating the relevant groups of taxpayers as members of distinguishable classes subject to different tax burdens. *Id.*

In *Commonwealth v. Lafferty,* 426 Pa. 541, 233 A.2d 256 (1967), our state Supreme Court, in interpreting a previous Pennsylvania sales and use tax, noted:

> Further, it is in the context of the whole Sales and Use Tax statute that we must view the exclusion. Since this statute is one designed to raise revenue, the state need not justify any distinction drawn between the taxed and the nontaxed 'so long as some other reasonable basis for treating the various classes differently exits. Where such distinction exists, the wisdom of the legislative policy of taxing one class and not another is not a matter for the courts.'

426 Pa. at 550, 233 A.2d at 261.

As discussed herein, there exists a reasonable basis for a distinction between newspapers and magazines based on the format and frequency of the publication, as well as a newspaper's eligibility to carry legal advertising. As noted in *Leathers,* "Legislatures have especially broad latitude in creating classifications and distinctions." —— U.S. at ——, 111 S.Ct. at 1446. Furthermore, we note that the legislature has valid interests in exempting newspapers from the sales tax, including the promotion of an inexpensive daily source of public information, thereby enhancing the general knowledge and literacy of its citizens. Accordingly, we conclude that the sales

tax does not violate Petitioners' rights under either the equal protection or uniformity clauses.

Petitioners' application for summary relief is denied.

## ORDER

AND NOW, this 25th day of November, 1992, the Petitioners' application for summary relief is denied.