## Stephenson v. Szabo

*Loraine Smith Tabakin* and *Donald B. Moreman,* for plaintiff.

*Linda L. Whalen, for defendant.*

McCORMICK, Jr., *J.,* December 3, 1992—This matter is before the court on the defendant's preliminary objections in the nature of a demurrer, motion to strike, and a motion for a more specific pleading. Maryanne Stephenson has brought a "palimony" action against Donald W. Szabo wherein she seeks damages for breach of contract and intentional infliction of emotional distress. Stephenson alleges that in 1984 she and Szabo agreed that she would leave her job and devote herself full time to his needs, travel on business trips with him, locate a condominium in Florida for him to purchase, locate a home for them to live in, and would assume all of the responsibilities of maintaining their joint household. In return, Szabo agreed to "provide for [her] for the rest of her life and to marry her." Stephenson alleges that this arrangement continued for six years but, alas, the relationship soured and the parties separated. Szabo has allegedly breached their agreement by failing to pay Stephenson's expenses. Stephenson seeks monetary redress for various damages she claims to have suffered.

When considering a demurrer, the court must accept as true all of the well-pleaded material facts set forth in the complaint and all of the reasonable inferences deducible from those facts. *Ward v. Serfas,* 387 Pa. Super. 425, 564 A.2d 251 (1989). A demurrer may only be sustained where the complaint, on its face, fails to establish a legal right to relief. *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986). A demurrer may not be sustained unless the law says with certainty that no recovery is possible. *Snyder v. City of Philadelphia,* 129 Pa. Commw. 89, 564 A.2d 1036 (1989).

Szabo argues in his demurrer that Stephenson makes a claim for damages arising from breach of a promise to marry, which is a claim specifically prohibited by statute historically referred to as the Heart Balm Act, 23 Pa.C.S. §1901 et seq. This statute expressly provides: "All cause of action for breach of contract to marry are abolished." 23 Pa.C.S. §1902. Elsewhere, the statute states: "No contract to marry which is made within this Commonwealth shall give rise, either within or without this Commonwealth, to a cause of action for breach of the contract." 23 Pa.C.S. §1903.

At first glance this case would appear to be squarely barred by the Heart Balm Act. But the appellate authorities addressing the circumstances as pleaded by the plaintiff suggest otherwise. The most recent appellate decision considering the Heart Balm Act is *Ferraro v. Singh,* 343 Pa. Super. 576, 495 A.2d 946 (1985). In *Ferraro* the plaintiff sought to recover non-refundable deposits paid for the wedding music, photographer, reception hall and a custom-made wedding dress, as well as damages for intentional infliction of emotional distress, following a breached promise to marry. The Superior Court struck down these claims as being barred

by the act. The court opined that the purpose of the act is to eliminate the "coercive potential" in legal actions following a breach of promise to marry. But the *Ferraro* decision specifically distinguishes the case of *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957), which stated:

"The [act] is confined to actions for breach of contract to marry, that is, the actual fracture of the wedding contract. It thus follows that a breach of any contract which is not the actual contract for marriage itself, no matter how closely associated with the proposed marriage, is actionable." *Id.* at 511, 136 A.2d 131-32.

*Ferraro,* then, applied the act specifically to defeat a claim for lost wedding expenses, and did not address whether the act can bar a claim for a breach of a contract otherwise related to the personal involvement of the parties but which is not limited to a marriage promise. Although the abolition language of the act is rather broad and matter-of-fact, *Ferraro* applies it very narrowly to lost monies associated with a canceled wedding ceremony. In this case, Stephenson alleges a contract that goes beyond merely an agreement to marry, and alleges damages unrelated to a wedding ceremony. Thus, under *Ferraro,* the Heart Balm Act cannot confidently be used as a shield against her claims.

The Superior Court in *Ferraro* discussed the public policy of prohibiting a cause of action for breach of a promise to marry. The court recognized that the intent of the act was to "prevent the recovery of damages based upon confused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation...." The court concluded its opinion with this observation:

"[T]he law does not provide a remedy for every wrong; some wrongs are simply not legally cognizable

wrongs. The 'arrows of outrageous fortune' sometimes come from Cupid's bow, but the law does not provide a shield from them and their consequences." *Ferraro, supra.*

But this court must also consider the prior cases of *Mullen v. Suchko,* 279 Pa. Super. 499, 421 A.2d 310 (1980); *Knauer v. Knauer,* 323 Pa. Super. 206, 470 A.2d 553 (1983); and *Baldassari v. Baldassari,* 278 Pa. Super. 312, 420 A.2d 556 (1980). All three of these cases preceded *Ferraro,* but none are mentioned in the *Ferraro* opinion, apparently for the reason that these three cases involve alleged contracts that exceeded the boundaries of a simple promise to marry.

In *Mullen, supra,* the plaintiff alleged that she was requested by the defendant to quit her job in order to be available to go on overnight trips with him and promised in exchange to "take care of her for the rest of her life." In reliance upon this promise the plaintiff quit her job, went on various trips with the defendant, permitted the defendant to move into her home, and received expense money from the defendant. Not surprisingly, the defendant later left her and she brought suit to recover monetary damages for lost wages and employee benefits. The Superior Court determined that this claim could not be dismissed on preliminary objections. The contract, as pleaded by the plaintiff, was sufficient to sustain a cause of action for its breach, even though it arose in the context of a non-marital, personal relationship. The *Mullen* decision is dispositive of the demurrer in this case.

The defendant in the present case also argues that the plaintiff's claim cannot be sustained because it is based upon a contract for meretricious services and is void as against public policy. It is true that, according to the Restatement of Contracts, if illicit sexual in-

tercourse is any part of the consideration for a contract, the contract is unenforceable. Restatement of Contracts, §589 (1932). However, consistent with the principle that on demurrer a complaint must be read most favorably to the pleader, it is apparent that the consideration for the contract as pleaded by the plaintiff does not include sexual intercourse. The plaintiff does plead that the parties engaged in sexual activity, presumably involving intercourse, but the sexual activity was not pleaded as the consideration for their contract. While their personal relationship certainly included sexual relations, the plaintiff's complaint cannot be read to conclude that the contract relied upon by the plaintiff was expressly and inseparably founded on sexual services. See *Baldassari, supra; Mullen, supra.* Therefore, the plaintiff's breach of contract claim cannot be dismissed by reason of a meretricious relationship.

Szabo also objects to Stephenson's claim for damages for intentional infliction of emotional distress for the reason that this is a contract action not supporting such a claim. Stephenson has alleged Szabo repeatedly made repulsive, outrageous and degrading sexual demands upon her and these demands caused her emotional distress. It is well known that damages for emotional distress are not ordinarily allowed in breach of contract actions. *Rodgers v. Nationwide Insurance Company,* 344 Pa. Super. 311, 496 A.2d 811 (1985). Such damages are generally permitted only in the most limited and extreme cases. Even in a tort action, the conduct complained of must be of an extreme and outrageous type. *Jones v. Nissenbaum, Rudolph and Seidner,* 244 Pa. Super. 377, 368 A.2d 770 (1976). Although the sexual demands of the defendant, as pleaded by the plaintiff, are decidedly perverse and offensive, when read in the context of the per-

sonal and intimate relationship between them, they do not bear the degree of extreme behavior warranting damages for intentional infliction of emotional distress. The sexual behavior described by the plaintiff is not of the extreme and outrageous sort that would warrant a claim for emotional distress in this breach of contract action where, by the plaintiff's own description, the relationship was extremely intimate. See *Mullen, supra.* Accordingly, the plaintiff's claim for intentional infliction of emotional distress will be dismissed.

For the reasons stated above, the court enters the following

## ORDER OF COURT

And now, December 3, 1992, upon careful consideration of the preliminary objections filed by the defendant to the plaintiff's complaint, it is hereby ordered, adjudged and decreed that the preliminary objections are granted as to Count III of the plaintiff's complaint and the said Count III is hereby dismissed. The preliminary objections are otherwise denied.